1
2
3
4
5
6                      UNITED STATES DISTRICT COURT
7              FOR THE SOUTHERN DISTRICT OF CALIFORNIA
8
9    MANUFACTURED HOME                    )
10   COMMUNITIES, INC., a                 )
     corporation,                         )    Case No. 03cv2342 J (BLM)
                                          )
11                        Plaintiff,      )    **ORDER GRANTING DEFENDANTS'**
                                          )    **RENEWAL MOTION TO STRIKE**
12          vs.                           )    **STATE TORT CAUSES OF ACTION**
                                          )    **[Doc. No. 154]**
13                                        )
     COUNTY OF SAN DIEGO and              )
14   DIANNE JACOB,                        )
                                          )
15                        Defendants.     )
16   _____
17
18          Currently before the Court is Defendants' Renewal Motion to Strike State Tort Causes

19   of Action Pursuant to California Code of Civil Procedure § 425.26 ("Renewal Motion"). [Doc.

20   No. 154.]  Plaintiff filed an Opposition to the Renewal Motion, and Defendants filed a Reply.

21   [Doc. Nos. 156, 158.]  The Court has determined that the issues presented are appropriate for

22   decision without oral argument. *See* S.D. CAL. CIVLR 7.1(I)(2).  For the reasons set forth below,

23   the Court **GRANTS** Defendants' Renewal Motion.

24                              *Factual Background*

25          In July and September of 2002, Plaintiff sent notices to three of its manufactured

26   home parks, Lamplighter Village Mobile Home Park, Rancho Valley Mobile Home Park,

27   and Rancho Mesa Mobile Home Park, informing tenants of upcoming rent increases.  (Pl.'s

28   Opp. at 2; Def s Mem. of P. and A. at 2.)  In response, tenants of the Lamplighter Village

Mobile Home Park ("Lamplighter Park") contacted Defendant Dianne Jacob ("Defendant Jacob"), the San Diego County Supervisor representing District Two.  (Decl. Of Pettingill ¶ 2; Def.'s Exs. 1, 2.)  Plaintiff claims that Defendant Jacob subsequently undertook the following actions[1]:

On November 15, 2002, Defendant Jacob issued a News Advisory stating that Plaintiff was preying upon elderly tenants with fixed incomes by raising the rent by 25%. (Sec. Am. Compl. ¶ 14; Decl. of Yusim ¶ 23; Pl.'s Ex. 23.)

On November 16, 2002, Defendant Jacob attended a tenants meeting at Lamplighter Park, where Defendant Jacob made several allegedly false statements about Plaintiff, including the following: (1) Plaintiff is a greedy, profit-driven company that enjoys forcing the elderly out of their homes in order to move in more expensive homes for a greater profit; (2) "it would be interesting to see" if Plaintiff had engaged in any fraudulent actions; and (3) Defendant Jacob had spoken with County Counsel and District Attorney Bonnie Dumanis, who were "very interested" in following up on whether civil or criminal actions should be pursued against Plaintiff.  (Sec. Am. Compl. ¶¶ 16-18; Decl. of Yusim ¶ 24; Pl.'s Ex. 24.)

In a letter dated November 18, 2002, to Plaintiff's Chairman, Sam Zell, and distributed to Lamplighter Park tenants and attached to a subsequent civil complaint, Defendant Jacob made the following allegedly false statements: (1) Plaintiff's actions were "rent gouging at its worst" and indicative of "corporate greed"; (2) "[s]ome of the residents have already been forced to surrender their homes"; and (3) Plaintiff's rent increase was well above the 2003 Fair Market Rent of $539 for manufactured home spaces.  (Sec. Am. Compl. ¶¶ 21, 109, 110; Decl. of Yusim ¶ 27; Pl.'s Ex. 27.)

On or about December 10, 2002, Defendant Jacob allegedly stated to the local news media that Plaintiff had lied to the Department of Environmental Health about Defendant's clean-up effort in response to a sewage spill at Rancho Valley Mobile Home Park ("Rancho

---

[1] The Second Amended Complaint also contains other factual allegations which formed the basis of Plaintiff's federal claims under 42 U.S.C. § 1983 and are not relevant to the present Renewal Motion. *See* Sec. Am. Compl. ¶¶ 107, 129.

Valley Park").  (Sec. Am. Compl. ¶¶ 23, 111.)  Defendant Jacob allegedly also stated: (1) that Plaintiff is a "bad company" and that she wanted them "out of town," (2) that they "shouldn't get away with" their lies, and (3) that she wanted "to make sure that they're cited for every single offense . . . and whatever actions need to be taken are taken, civil [sic] or criminally."  (*Id.* at ¶ 23; Decl. of Yusim ¶ 13; Pl.'s Ex. 13.)

On January 9, 2003, the San Diego Union Tribune published an article with Defendant Jacob's statements "to the effect that [Plaintiff] was 'preying on older people of limited economic means,' and that she was going to 'mak[e] things even hotter for the predatory company.'"  (Sec. Am. Compl. ¶ 27.)

On April 5, 2003, Defendant Jacob allegedly falsely stated to tenants that Plaintiff made a practice of buying "distressed properties with the intent to run out the older residents to bring in newer homes," and told tenants that since no rent control ordinance had been passed, "'we need to take other measures . . . like litigation.'"  (Sec. Am. Compl. ¶¶ 34, 35, 112.)

On August 16, 2003, during a rally at Lamplighter Park, Defendant Jacob (1) described Plaintiff as a "Goliath," (2) encouraged tenants to "FIGHT" against Plaintiff, (3) told residents "You have a PROBLEM, and that problem is [Plaintiff]," and (4) told tenants to "get mad" at Plaintiff.  (*Id.* ¶¶ 40, 41.)

On November 1, 2003, Defendant Jacob submitted an allegedly false and misleading affidavit in support of a preliminary injunction filed by LV United Inc., comparing Plaintiff's rent levels with the Department of Housing and Urban Development's affordable rent schedule and stating that tenants would face irreparable harm if forced to pay rent increases.  (*Id.* ¶ 43.)

On November 5, 2003 and March 23, 2004, Defendant Jacob allegedly falsely stated to news media that Plaintiff is an unscrupulously greedy corporation that has no business dealing with people and that Defendant Jacob would like to see them run out of San Diego.  (Pl.'s Opp. at 10; Decl. of Yusim ¶¶ 40, 41; Pl.'s Exs. 40, 41.)

On an unspecified date, during a local news broadcast, Defendant Jacob "vowed to 'bring [Plaintiff] to [its] knees.'"  (*Id.* ¶ 25.)  On another unspecified date, Defendant Jacob

03cv2342 J (BLM)

told tenants, "Purchasing the park is your ultimate answer because there's finality."  (*Id.* ¶ 26.)

Plaintiff claims that Defendant Jacob published the allegedly false statements "with the intent of harming [Plaintiff's] interests, namely with the intent of forcing [Plaintiff] out of San Diego County," and that Plaintiff has suffered pecuniary harm as a result.  (*Id.* ¶¶ 113, 116, 117.)  Plaintiff claims that Defendant County is vicariously liable because Defendant Jacob's actions were committed within the scope of her employment.  (*Id.* ¶ 118.)

### *Procedural Background*

On November 24, 2003, Plaintiff filed a complaint against Defendants County of San Diego, LV United, Inc., Rancho Mesa Residents, Inc., and Rancho Valley Homeowner's Association, Inc., alleging violations of 42 U.S.C. § 1983 based on denial of equal protection, denial of First Amendment rights, violation of the Fifth Amendment takings clause, and denial of substantive due process.  (Compl. at 5-12.)  Plaintiff also alleged a state law claim for declaratory relief.  (*Id.* at 12.)  On May 4, 2004, the Court granted Defendants' motion to dismiss the claim for declaratory relief and dismissed the case as to Defendants LV United, Inc., Rancho Mesa Residents, Inc., and Rancho Valley Homeowner's Association, Inc., since this was the only claim against these defendants.  [Doc. No. 35.]

On December 30, 2004, Plaintiff filed a First Amended Complaint, adding Dianne Jacob as an individual defendant.  [*See* Doc. No. 54.]  Finally, on February 1, 2005, Plaintiff filed a Second Amended Complaint, adding state law causes of action of (1) defamation, or trade libel and (2) tortious interference with prospective economic advantage.  [*See* Doc. No. 58.]

Defendants filed a Motion to Strike State Tort Causes of Action Pursuant to California Code of Civil Procedure § 425.26 with respect to Plaintiff's state law claims of (1) defamation, or trade libel and (2) tortious interference with prospective economic advantage. [Doc. No. 64.]  Plaintiff filed an Opposition to the Motion, and Defendants filed a Reply. [Doc. Nos. 79, 83.]  On May 19, 2005, this Court granted Defendants' Motion to Strike, dismissing all of Plaintiff's state law claims [doc. no. 99], and awarded attorneys' fees to the Defendants on the Motion [doc. no. 122].  On May 24, 2005, the Court dismissed Plaintiff's

4

1   remaining claims on summary judgment.  [Doc. No. 100.]  Plaintiff appealed.

2          In a Memorandum decision filed on March 6, 2008, a panel of three Ninth Circuit

3   judges unanimously affirmed the summary judgment in favor of Defendants on all of the

4   federal civil rights claims.  [Doc. No. 147.]  In a separately published opinion, the panel split

5   two to one in a decision reversing in part the judgment granting Defendants' Motion to

6   Strike.  [*Id.*; *Manufactured Home Communities v. County of San* Diego, 544 F.3d 959 (9th

7   Cir. 2008).]  The panel majority found that the Court erred in granting the Motion to Strike

8   solely on the grounds that all of the statements alleged by Plaintiff were non-actionable

9   opinions.  The majority held that a reasonable factfinder could find the following three

10  statements to be actionable as provably false assertions of fact: Defendant Jacob's statements

11  that (1) Plaintiff "lied to the County.  Said to the County that everything was fine, the sewage

12  situation was fine, the sewage system was fixed.  And, in fact, it was not."; (2) Plaintiff "has

13  a reputation throughout the country of running people out of older mobilehome parks,

14  increasing the value of the park, and then selling it at a profit."; and (3) the incoming District

15  Attorney was "very interested in following up to determine whether there are civil and/or

16  criminal actions that should be filed against" Plaintiff.  [*Id.*] The panel agreed with this Court

17  that "Jacob's statements that MHC is 'unscrupulous' and 'greedy' and engaged in 'rent

18  gouging' were the kind of heated commentary that is often part of such public debates, and

19  are not actionable as provably false assertions of fact." [*Id.*]  The judgment was remanded for

20  further proceedings.

21         On remand, Defendants have filed the instant Renewal Motion and request that the

22  Court strike Plaintiff's state law causes of action.  Defendants argue that even if the

23  statements at issue are viewed as actionable statements of fact, Plaintiff has nonetheless

24  failed to meet its burden to show a probability of success on the merits because it did not

25  produce evidence to prove the falsity of any facts in the statements.

26                                   ***Legal Standard***

27         California enacted its anti-SLAPP law, "SLAPP" standing for strategic lawsuit against

28  public participation, *see Braun v. Chronicle Publishing Co.*, 61 Cal. Rptr. 2d 58, 59 fn.l (Cal.

    Ct. App. 1997), in reply to a "disturbing increase in lawsuits brought primarily to chill the

valid exercise of the constitutional rights of freedom of speech." Cal. Civ. Proc. Code § 425.16(a). The statute is designed to allow the early dismissal of meritless claims aimed at chilling an individual's First Amendment rights of petition and free speech. *Braun,* 61 Cal. Rptr. 2d at 61. The statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1).

To prevail on the motion to strike, the defendant must first make a prima facie showing that the plaintiff's claims arise from defendant's acts in furtherance of her right of petition or free speech. *See Equilon Enterprises v. Consumer Cause, Inc.*, 52 P.3d 685, 690 (Cal. 2002); *see also Braun*, 61 Cal. Rptr. 2d at 61.

Once this showing is made, the presumption is that the purpose of the suit was to chill the defendant's rights, and the burden shifts to the plaintiff to show "a probability of prevailing on the claims." Cal. Civ. Proc. Code § 425.16(b). The California Supreme Court has interpreted this to mean that the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilson v. Parker, Covert & Chidister*, 50 P.3d 733, 739 (Cal. 2002). Not only must the plaintiff demonstrate that prevailing is possible, it must demonstrate that prevailing is a "reasonable probability." *Rusheen v. Cohen*, 128 P.3d 713, 724 (Cal. 2006) (noting that "the trial court correctly found that there was no reasonable probability" of plaintiff prevailing and affirming grant of the anti-SLAPP motion).

In ruling on an anti-SLAPP motion to strike, the court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant. Cal. Civ. Proc. Code § 425.16(b)(2). Though the court does not weigh the credibility of competing evidence, *see Dixon v. Superior Court*, 36 Cal. Rptr. 2d 687, 696 (Cal. Ct. App. 1994), it should grant the motion if, "as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." *Wilson*, 50 P.3d at 739.

*See also Navellier v. Sletten*, 52 P.3d 703, 708 (Cal. 2002) (noting that Plaintiff's claims do not survive the motion to strike if Plaintiff cannot show that the cause of action has at least "minimal merit").

The plaintiff's burden as to the second prong of the anti-SLAPP test is therefore akin to that of a party opposing a motion for summary judgment. *See Manufactured Home Communities v. County of San Diego*, 544 F.3d 959, 968 (9th Cir. 2008) (J. Callahan, dissenting); *Yu v. Signet Bank/Virginia*, 126 Cal. Rptr. 2d 516, 530 (Cal. Ct. App. 2002); *Kyle v. Carmon*, 84 Cal. Rptr. 2d 303, 307 (Cal. Ct. App. 1999). Under California law, the plaintiff in a defamation suit must prove the falsity of the underlying, implied facts in order to survive summary judgment. *Eisenberg v. Alameda Newspapers, Inc.*, 88 Cal. Rptr. 2d 802, 822-23 (Cal. Ct. App. 1999) (affirming grant of summary judgment in defamation action when plaintiff could not prove that the underlying assertions of fact were false). The defendant satisfies the truth defense if the "gist" or "sting" of the statements is substantially true. *See Gilbert v. Sykes*, 53 Cal. Rptr. 3d 752, 766 (Cal. Ct. App. 2007).

### *Discussion*

The Ninth Circuit agreed with this Court's finding that several of Defendant Jacob's statements were non-actionable, so only three statements remain at issue: (1) Jacob's statement that MHC "lied to the County. Said to the County that everything was fine, the sewage situation was fixed. And, in fact, it was not;" (2) Jacob's statement that MHC "has a reputation throughout the country of running people out of older mobilehome parks, increasing the value of the park, and then selling it at a profit;" and (3) Jacob's statement that the incoming District Attorney was "very interested in following up to determine whether there are civil and/or criminal actions that should be filed against" MHC. *See Manufactured Home Communities*, 544 F.3d at 963-64. It is undisputed that these statements were made in furtherance of Defendant Jacob's right of petition or free speech, thus satisfying the first prong of the test for an anti-SLAPP motion to strike. *See id.* at 963; *see also Equilon Enterprises v. Consumer Cause, Inc.*, 52 P.3d at 690; *Braun*, 61 Cal. Rptr. 2d at 61. Therefore, the burden shifts to Plaintiff MHC to make a showing as to the probability of

7

success on the merits.  Cal. Civ. Proc. Code § 425.16(b).  The Court will consider the probability of success on the merits for each statement in turn.

**A. Defendant's Statement that MHC "Lied to the County"**

On December 10, 2002, Defendant Jacob made the following statement to local news outlets: "This company in this case lied to the County.  Said to the County that everything was fine, the sewage situation was fixed.  And, in fact, it was not."  (Opposition, Ex. 6 at 66.)  Plaintiff has provided the Court with evidence that MHC worked to address the sewage spill at the Rancho Valley mobile home park, employing contractors to clean up the affected site.  (*See* Opposition, Exs. 14, 16, 17, 18, 19.)  Defendants, however, have also provided substantial evidence demonstrating that the problem was not resolved at the time that Defendant Jacob made the statement.  (*See* Renewal Motion, Exs. AP, AQ, AR, AS, AT.)

It is clear that MHC's contractors began working on the problem shortly after it was reported on December 6, 2002.  (*See* Opposition, Ex. 16.)  On December 7, a park resident called the County Department of Health to complain about the situation.  (*See* Opposition, Ex. 19.)  A county employee then contacted MHC and was told that MHC was working on the problem and the affected home would be cleaned and sanitized by Monday, December 9.  (*Id.*)  At the end of the day on Monday, December 9, a county employee responded to the park and spoke with several residents who complained of contamination problems and inaction on the part of MHC.  (*Id.*)  The mobile home that was most affected by the sewage backup on December 6, which belonged to Mike Dmochowski, was still uninhabitable.  (*Id.*)  On December 10, Defendant Jacob and several local news crews visited the park and found that the problem was not resolved: the Dmochowskis' trailer was still flooded with sewage.  In the same newscast in which Defendant Jacob made the statement quoted above, County Department of Health employee Lleu Munter also commented on his office's communications with MHC:

> Reporter:   When County health officials called the property owner, Manufactured Home Communities ("MHC"), they say they were told the problem was fixed.

| | | |
|---|---|---|
| 1 | Lleu Munter: | Basically, we were told by the incident response team that there had been plumbers and repair work had been initiated to take care of the problem. |
| 2 | | |
| 3 | Reporter: | But it wasn't? |
| 4 | Lleu Munter: | Apparently not, no. |

(Opposition, Ex. 6.)  In an interview with another news team, Mr. Munter said, "It appears that it was not satisfactorily resolved."  (Opposition, Ex. 11.)  Based on this evidence, it is clear that, although MHC did take some steps to remedy the problem, it was not fixed by the time Defendant Jacob made her statement. Therefore, the Court **FINDS** that Defendants' "evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim," *Wilson*, 50 P.3d at 739, and Plaintiff has not shown a probability of success on the merits as to this claim.

**B. Defendant's Statement about MHC's Reputation**

In a statement to the local news media on December 10, 2002, Defendant Jacob said that MHC has "a reputation throughout the country of running people out of older mobile home parks, increasing the value of the park, and then selling it at a profit." (Opposition, Ex. 6 at 66.) As discussed previously, in order to prevail at the second stage of anti-SLAPP motion to strike, a plaintiff must offer evidence that proves the falsity of the underlying, implied facts. *Eisenberg*, 88 Cal. Rptr. 2d at 822-23.  In its attempt to prove the falsity of this statement, Plaintiff focuses on the last part of the statement and asserts that it has "no such practice of 'flipping' its properties to reap a profit." (Opposition at 7.)  On the contrary, MHC asserts that it holds properties as long-term investments. (*Id.*)

While MHC has offered evidence to show that it does not have a practice of "flipping" properties, it has not provided evidence to demonstrate that the "gist" or "sting" of the statement is false. *See Gilbert*, 53 Cal. Rptr. 3d at 766.  MHC acknowledges that the "thrust of most of the statements was that MHC has a reputation or practice of increasing rents at its communities to force out elderly residents, replace their homes with new homes, and increase the value of its communities." (Opposition at 6.)  Notably, the thrust of the statements does not include that MHC "flips" properties.  MHC has not provided any evidence to indicate

that it does not have a reputation for raising rents and forcing out residents.  Moreover, Defendants have provided several news articles from across the country that detail the steep rent increases MHC has imposed after purchasing properties, the negative impact these increases have had on senior citizen residents, and MHC's attempts to challenge rent control ordinances in areas where it owns property.  (*See* Renewal Motion, Exs. AD, AE, AG, AH.)  The Court therefore **FINDS** that Defendants' "evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim," *Wilson*, 50 P.3d at 739, and Plaintiff has not shown a probability of success on the merits as to this claim.

**C.  Defendant's Statement about the District Attorney's Interest in the Case**

At a Lamplighter Village resident meeting on November 15, 2002, Defendant Jacob said, "I have already talked with County Counsel and District Attorney-Elect Bonnie Dumanis and they are very interested in following up to determine whether or not there are civil and/or criminal actions that should be filed against the company." (Opposition, Ex. 1 at 1.)  Plaintiff MHC has not offered evidence that proves the falsity of the underlying, implied facts of this statement.  *See Eisenberg*, 88 Cal. Rptr. 2d at 822-23.  MHC argues that Defendant Jacob did not have a formal meeting with District Attorney Bonnie Dumanis about the MHC matter until February 11, 2003 and therefore, Defendant Jacob could not have been "working with" Ms. Dumanis in November 2002.  (Opposition at 14.)  However, in deposition testimony, Ms. Dumanis asserted that she saw Defendant Jacob "on a regular basis, even prior to my election" in November 2002. (Opposition, Ex. 26 at 7:22-23).  Furthermore, when asked what types of matters Defendant Jacob discussed with her prior to her election, Ms. Dumanis answered: "Well, there were various things.  But I recall this [concerns about MHC] being one of them.  I don't remember the exact conversation.  Just that I expressed if I were the district attorney this would be something I would be interested in looking into, along with some other matters."  (*Id.* at 19:9-25.)  Ms. Dumanis also recalled telling Defendant Jacob that she "would be interested in following up on this conversation."  (*Id.* at 20:8-11.)  The Court **FINDS** that the evidence provided tends to show that the facts underlying Defendant Jacobs' statement were true and Plaintiff has not shown a probability

of success on the merits as to this claim.

### *Conclusion*

For the reasons above, the Court **GRANTS** Defendants' Renewal Motion to Strike State Tort Causes of Action.

**IT IS SO ORDERED.**

DATED: March 17, 2009

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge

cc:  Magistrate Judge Major
    All Counsel of Record

03cv2342 J (BLM)